IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:22-CV-149-RJ

ANNETTE GRAYER,

    Plaintiff/Claimant,

v.

KILOLO KIJAKAZI,
Acting Commissioner of Social Security,

    Defendant.

O R D E R

This matter is before the court on the parties' cross-motions for judgment on the pleadings [DE-16, -19] pursuant to Fed. R. Civ. P. 12(c). Claimant Annette Grayer ("Claimant") filed this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review of the denial of her application for a period of disability and Disability Insurance Benefits ("DIB"). The time for filing responsive briefs has expired, and the pending motions are ripe for adjudication. Having carefully reviewed the administrative record and the motions and memoranda submitted by the parties, Claimant's Motion for Judgment on the Pleadings is allowed, Defendant's Motion for Judgment on the Pleadings is denied, and the matter is remanded to the Acting Commissioner for further proceedings.

## I. STATEMENT OF THE CASE

Claimant protectively filed an application for a period of disability and DIB on June 4, 2020, alleging disability beginning May 29, 2020. (R. 15, 175–83). The claim was denied initially and upon reconsideration. (R. 63–89). A hearing before an Administrative Law Judge ("ALJ") was held on September 14, 2021, at which Claimant, represented by counsel, and a vocational

expert ("VE") appeared and testified. (R. 33–62). On October 26, 2021, the ALJ issued a decision denying Claimant's request for benefits. (R. 12–31). On February 14, 2022, the Appeals Council denied Claimant's request for review. (R. 1–6). Claimant then filed a complaint in this court seeking review of the now-final administrative decision.

## II. STANDARD OF REVIEW

The scope of judicial review of a final agency decision regarding disability benefits under the Social Security Act ("Act"), 42 U.S.C. § 301 *et seq.*, is limited to determining whether substantial evidence supports the Commissioner's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). While substantial evidence is not a "large or considerable amount of evidence," *Pierce v. Underwood*, 487 U.S. 552, 565 (1988), it is "more than a mere scintilla . . . and somewhat less than a preponderance." *Laws*, 368 F.2d at 642. "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996), *superseded by regulation on other grounds*, 20 C.F.R. § 416.927(d)(2)). Rather, in conducting the "substantial evidence" inquiry, the court's review is limited to whether the ALJ analyzed the relevant evidence and sufficiently explained his or her findings and rationale in crediting the evidence. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439–40 (4th Cir. 1997).

## III. DISABILITY EVALUATION PROCESS

The disability determination is based on a five-step sequential evaluation process as set forth in 20 C.F.R. § 404.1520 under which the ALJ is to evaluate a claim:

> The claimant (1) must not be engaged in "substantial gainful activity," i.e., currently working; and (2) must have a "severe" impairment that (3) meets or exceeds [in severity] the "listings" of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity to (4) perform . . . past work or (5) any other work.

*Albright v. Comm'r of the SSA*, 174 F.3d 473, 475 n.2 (4th Cir. 1999). "If an applicant's claim fails at any step of the process, the ALJ need not advance to the subsequent steps." *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995) (citation omitted). The burden of proof and production during the first four steps of the inquiry rests on the claimant. *Id.* At the fifth step, the burden shifts to the ALJ to show that other work exists in the national economy which the claimant can perform. *Id.*

When assessing the severity of mental impairments, the ALJ must do so in accordance with the "special technique" described in 20 C.F.R. § 404.1520a(b)–(c). This regulatory scheme identifies four broad functional areas in which the ALJ rates the degree of functional limitation resulting from a claimant's mental impairment(s): understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself. *Id.* § 404.1520a(c)(3). The ALJ is required to incorporate into his written decision pertinent findings and conclusions based on the "special technique." *Id.* § 404.1520a(e)(3).

In this case, Claimant alleges the ALJ erred by failing to perform a function-by-function analysis of Claimant's contested ability to sit. Pl.'s Mem. [DE-17] at 9–16.

## IV. ALJ'S FINDINGS

Applying the above-described sequential evaluation process, the ALJ found Claimant "not

3

disabled" as defined in the Act. At step one, the ALJ found Claimant had not engaged in substantial gainful employment since the alleged onset date. (R. 18). Next, the ALJ determined Claimant had the severe impairments of degenerative disc disease of the lumbar and cervical spine, coronary arteriosclerosis, bilateral knee osteoarthritis, and obesity, as well as the non-severe impairments of hypertension, anomalous origin of right coronary artery status post attempted translocations followed by myomectomy, vitamin D deficiency, anemia, gastroesophageal reflux disease (GERD), mild degenerative changes of the hands and wrists, chronic kidney disease stage III, fibroid uterus, tinnitus, history of adjustment disorder, post-traumatic stress disorder, and bereavement. (R. 18–19). However, at step three, the ALJ concluded Claimant's impairments were not severe enough, either individually or in combination, to meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 20). Applying the technique prescribed by the regulations, the ALJ found that Claimant's mental impairments had resulted in a mild limitation in adapting or managing oneself and no limitation in understanding, remembering, or applying information; interacting with others; and concentrating, persisting, or maintaining pace. (R. 19–20).

Prior to proceeding to step four, the ALJ assessed Claimant's RFC, finding Claimant had the ability to perform sedentary work[1] with the following additional limitations:

> [T]he claimant can occasionally climb ramps and stairs, and balance as defined by the SCO. The claimant can occasionally stoop, kneel, crouch, and crawl, and never climb ladders, ropes, or scaffolds. The claimant can work in an environment with

---

[1] Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met. 20 C.F.R. § 404.1567(a); S.S.R. 96-9p, 1996 WL 374185, at *3 (July 2, 1996). "Occasionally" generally totals no more than about 2 hours of an 8-hour workday. "Sitting" generally totals about 6 hours of an 8-hour workday. S.S.R. 96-9p, 1996 WL 374185, at *3. A full range of sedentary work includes all or substantially all of the approximately 200 unskilled sedentary occupations administratively noticed in 20 C.F.R. Part 404, Subpart P, Appendix 2, Table 1. *Id.*

4

no more than moderate noise (SCO), and must avoid all exposure to extremes of heat and cold, concentrated atmospheric conditions, unprotected heights, and dangerous machinery.

(R. 21–26). In making this assessment, the ALJ found Claimant's statements about her symptoms and limitations to be not entirely consistent with the medical and other evidence in the record. (R. 22). At step four, the ALJ concluded Claimant could perform the requirements of her past relevant work as a customer service representative. (R. 26–27).

## V. DISCUSSION

Claimant contends the ALJ erred in failing to perform a function-by-function analysis of her contested ability to sit when assessing the RFC. Pl.'s Mem. [DE-17] at 9–16. Defendant contends substantial evidence supports the ALJ's finding that Claimant has the RFC to perform sedentary work. Def.'s Mem. [DE-20] at 5–17.

"[T]he residual functional capacity 'assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions' listed in the regulations." *Mascio v. Colvin*, 780 F.3d 632, 636 (4th Cir. 2015) (quoting S.S.R. 96-8p). The ALJ must provide "a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." *Id.* (quoting S.S.R. 96-8p). "Only after such a function-by-function analysis may an ALJ express RFC 'in terms of the exertional levels of work.'" *Monroe v. Colvin*, 826 F.3d 176, 179 (4th Cir. 2016) (quoting *Mascio*, 780 F.3d at 636); *see also Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000) (observing that the ALJ "must build an accurate and logical bridge from the evidence to his conclusion"). However, the Fourth Circuit has rejected "a per se rule requiring remand when the ALJ does not perform an explicit function-by-function analysis." *Mascio*, 780 F.3d at 636. Rather, the court

5

explained that "[r]emand may be appropriate . . . where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review." *Id.* (citation omitted). Therefore, despite an ALJ's failure to conduct the function-by-function analysis, the court must look to the ALJ's RFC discussion to determine whether it otherwise provides a sufficient basis for meaningful review. *See Dowling v. Comm'r of Soc. Sec. Admin.*, 986 F.3d 377, 388 (4th Cir. 2021) (holding that "the lack of a rule requiring remand does not mean that remand is never the appropriate outcome when an ALJ fails to engage in a function-by-function analysis" and finding that remand was appropriate when the claimant's ability to sit was a contested issue and the ALJ "barely mentioned [the claimant's] sitting problems in his decision").

Claimant testified at the September 14, 2021 administrative hearing that she experienced difficulty performing her prior job as a customer service representative because sitting for so long every day caused problems in her neck and lower back, and as a result, she missed approximately one day of work per month. (R. 43). After Claimant stopped working her neck pain improved because she was no longer sitting all day but her lower back pain, which radiates to her legs, worsened. (R. 47, 49). Claimant has difficulty driving long distances but is able to drive short distances, such as a ten to fifteen minute trip to the doctor. (R. 45–46). Physical therapy helps her low back pain, injections provide relief for two weeks, and sitting or standing for longer than fifteen minutes exacerbates her pain. (R. 47–48). Claimant also has difficulty bending over to load the dishwasher. (R.54). Claimant has not returned to work since taking a retirement buyout in May 2020, because she cannot sit or stand for long periods of time due to her back pain. (R. 56).

Claimant contends that her testimony is consistent with her statements in a June 2020

function report that she cannot sit for a long period of time, her neck and back hurt when sitting, she tires easily and wants to lie down, she cannot function to the best of her ability due to pain, she spends most of the day in a recliner, and she only does small chores for a short time with rest breaks. (R. 223–24). Claimant also points to medical records dating from January 2019 through July 2021, where she reported that her pain was worse with prolonged sitting, (R. 344, 601, 609, 615, 690, 696, 729, 738); a physical therapy provider's recommendation in April 2021 that she break up any sustained sitting, (R. 734); her statement at a May 2021 doctor's appointment that she was unable to sit for the time required to do her job, (R. 723); and an April 2021 lumbar MRI that revealed diffuse disc bulging and bilateral facet hypertrophy with mild bilateral neural foraminal stenosis at L4-L5 and L5-S1, (R. 736).

The ALJ found Claimant capable of performing sedentary work with some postural and environmental limitations but no limit on sitting, (R. 21), which would generally require her to sit for up to six hours in an eight hour workday, S.S.R. 96-9p, 1996 WL 374185, at *3. In doing so, the ALJ did not perform a function-by-function assessment of Claimant's relevant and contested ability to sit. The ALJ did acknowledge Claimant's testimony that she was unable to sit for long periods and experiences neck and back pain when sitting but generally found her statements concerning the limiting effects of her symptoms to be not entirely consistent with the medical and other evidence of record. (R. 21–22). The ALJ proceeded to discuss Claimant's medical records, including those related to her neck and back pain. (R. 22–24). In summarizing the medical evidence, the ALJ noted Claimant's diagnosis of degenerative disc disease of the lumbar and cervical spine; her symptoms of decreased range of motion and strength, pain, tenderness to palpation, positive straight leg raising on the right, and decreased anterior musculature flexibility; and her participation in medication, physical, orthotics, and injection therapies without significant

improvement in her symptoms. (R. 24). The ALJ then concluded Claimant could perform sedentary work. *Id.*

The ALJ failed to build a logical bridge between the evidence and the conclusion that Claimant could sit for the amount of time required to perform sedentary work, and the RFC discussion fails to provide a basis for meaningful review. The Commissioner argues evidence in the record indicating that at times Claimant had normal range of motion, no motor weakness, no or intermittent back pain, moderate symptoms, a steady gait, no acute abnormalities on an MRI, and conservative treatment provides substantial evidence for the ALJ's determination that Claimant can sit for the up to six hours necessary to perform sedentary work. Def.'s Mem. [DE-20] at 6–11. But the ALJ cited contrary evidence, noted above, including several relevant positive examination findings and that Claimant's treatments failed to provide meaningful improvement, and Claimant consistently reported that her back pain was exacerbated by sitting, (R. 24, 344, 601, 609, 615, 690, 696, 723, 729, 738). The Commissioner also cites the consultative medical examiner and state agency medical consultant opinions that Claimant was not limited in her ability to sit as support for the ALJ's decision. Def.'s Mem. [DE-20] at 11–13. However, the ALJ found these opinions only somewhat or partially persuasive because they opined Claimant could perform light exertion work and the ALJ believed the medical evidence supported a more limited exertional level. (R. 24–25). The court cannot discern from the ALJ's discussion of these opinions how the medical evidence cited supports the conclusion that Claimant can sit for up to six hours in an eight hour workday.

The ALJ's decision fails to explain how the medical evidence is inconsistent with Claimant's reported sitting limitations, and it is the ALJ's role to resolve conflicts in the evidence and to explain how the evidence supports the conclusions. *See Thomas v. Berryhill*, 916 F.3d 307,

8

311 (4th Cir. 2019); *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012) ("In reviewing for substantial evidence, [the court does] not undertake to reweigh conflicting evidence, make credibility determinations, or substitute our judgment for that of the ALJ.") (citation omitted). The ALJ's failure to perform a function-by-function assessment of the relevant and contested function of Claimant's ability to sit was error warranting remand, where the court is unable to follow the ALJ's reasoning in finding Claimant can perform sedentary work requiring her to sit for up to six hours. *See Dowling*, 986 F.3d at 388; *Nicole C. v. Kijakazi*, No. 1:22-CV-02123-JMC, 2023 WL 4027481, at *5 (D. Md. June 15, 2023) (remanding case where the plaintiff's ability to sit was relevant and contested, and "the ALJ prematurely concluded that Plaintiff could perform sedentary work without narratively discussing the extent that Plaintiff can sit."). Accordingly, the matter is remanded for further consideration and explanation of the RFC finding regarding Claimant's ability to sit.

## VI. CONCLUSION

For the reasons stated above, Claimant's Motion for Judgment on the Pleadings [DE-16] is ALLOWED, Defendant's Motion for Judgment on the Pleadings [DE-19] is DENIED, and the case is REMANDED to the Acting Commissioner, pursuant to sentence four of § 405(g), for further proceedings consistent with this order.

SO ORDERED, this the **11** day of September 2023.

Robert B. Jones, Jr.
United States Magistrate Judge